First case this morning is case number 4-17-0573, Ward v. Decatur Memorial Hospital. Appearing for appellant is attorney Randy Walter and for the appellee is attorney Mike Keyhart. Good morning. Good morning. Counsel, are you ready to proceed? Yes. All right, Mr. Walter, you may. Good morning, counsel. It's plaintiff's position in this case that there's four separate distinct reasons why Judge Little was correct the first time when he denied the motion for summary judgment in the 2016 Ward case. The first is it's our position there's only been one cause of action throughout this case, and that's nursing negligence. It's very straightforward. Nurses didn't follow protocol. It led to the onset of a bed sore, which became the portal for necrotizing fasciitis, which resulted shortly thereafter in Mr. Ward's death. We've cited several cases that indicate that if counts are dismissed that don't have anything to do with the allegations that have to be approved in approved liability, those are not final determinations. And if you look at the original complaint, there are nine different counts, but the negligence allegations are exactly the same, that the nurses didn't inspect Mr. Ward, didn't monitor him, most importantly did not turn him every hour and a half or two hours like they were supposed to, didn't tell the doctor what his condition was, and that's what led to his death. That never changes. That cause of action is actually addressed in the motion for summary judgment that's denied. And the other counts that disappeared don't have anything to do with that cause of action. They have to do with damages and with who the parties are. For example, when we filed the case, we had seen a lot of letterhead that referred to Decatur Home Health Care Services like they were a separate entity. It turns out they're owned in whole by Decatur Memorial Hospital. Well, when that was pointed out to us, that's fine. We amended the complaint and eliminated them as a defendant in the case because it was duplicative. So it was not involuntary. It had nothing to do with the allegations of negligence, nor did the fact that Mr. Ward, the brother, was not yet the administrator of the estate. That was the process when we had to file the complaint because of timing. And the fact that the judge says it was a nullity in our attempt to include unnamed defendants, we didn't argue that either. That's correct. In fact, one of the things that runs throughout this case is that we never had anything to appeal. We never disagreed with anything Judge Bollinger said. It's just that none of it had anything to do with the cause of action in this case, which is medical negligence. One of the reasons that's important is that the prescribed purpose of race judicata is to prevent claim splitting and inefficiency in the running of the case. There's no claim splitting in this case. The defendants keep saying that we try different theories, and we deny that. We say there's only one theory in this case, and that's medical negligence based on the nurses' failure to live up to their requirements. And that includes this institutional negligence claim that we cite the Wilson case. By the way, we rely heavily on Wilson and Richter, which are two cases that are more recent than anything cited by defendants, which are unanimous Illinois Supreme Court decisions. In Wilson, similar facts, except it's doctors instead of nurses. Their public accounts are brought on apparent agency and agency. The apparent agency is dismissed. The Supreme Court says, well, you're still talking about the negligence of the doctors. It's the same cause of action. We're not going to say race judicata applies here. So that's the first thing. From our point of view, there's never any other cause of action that's addressed by the court except medical negligence. That's addressed in the motion for summary judgment denied. It exists when the case is voluntarily dismissed years later. Even if you decided that there were multiple theories, and let's look at the institutional negligence, even if you decided that that's a separate theory altogether, and we absolutely believe it isn't, and cite Wilson for that reason, the Richter case says in plain English that if a cause of action is dismissed without prejudice or if you're given leave to refile, those are not final judgments for the purpose of race judicata. Now, defendants talk about that case, and we cite that Richter describes what race judicata is for, and we agree with that. It's for the reason we mentioned before, no claim splitting, and don't cause any inefficiency for the defendants. But it also goes on to say, after saying that, if a claim is dismissed because of either with a right to refile or without prejudice, that's not a final decision. And in this case, institutional negligence claim, both those things occur. The judge says … Mr. Walters, it's been a long time since I have an occasion to be a trial judge, and I'm curious about the practice here. This was a multi-count complaint, was it not? Yes. And going as far back as to 2010 with regard to the first motions to dismiss, the trial court seems to have dismissed some of these counts with prejudice, and then other counts dismissed or stricken. Let me just read this. I'm just curious. If there's a multi-count complaint before the court on a motion to dismiss, isn't the normal practice to say if a particular count is dismissed with prejudice count by count, and if you're guaranteeing leave to refile the complaint, how does that even work with the dismiss with prejudice aspect? That is, if I'm the trial court and I'm going to grant you leave to amend the complaint, I suppose I could muse about concerns on counts one, two, and three, but if I'm granting you leave to refile pursuant to the motion to dismiss, can it truly be said that I'm dismissing certain counts with prejudice? No, and that's what I think Rick or Kay said. If it's dismissed with either leave to amend or without prejudice, that's not a final determination. But let's look at the decision in this case off bail was we could not file against unknown defense, and that was dismissed. Well, the judge called an annulment, so that was done. My point is that has nothing to do with the cause of action in the case. And the cases in here, these are what these cases say. It's not a judgment on the merits if the reason for the dismissal has no bearing or relationship to the allegations, which must be proven to establish liability. What we had to prove to establish liability was negligence on behalf of the nurses that caused our client's death. Whether unknown defendants are in the case or not, whether Decatur Home Health Care is owned by the hospital or not, whether my client has been named the administrator or not, has nothing to do with the allegations in the case that we have to prove in order to prove liability. So to me, the defendant's best argument is, well, institutional negligence, that's not duplicative allegations. It's a separate claim. And we cite Wilson to say that's not true. But if it is, that was specifically dismissed without prejudice and specifically dismissed with leave to amend. And one of the reasons for that is it took us quite a while to get the nurses' depositions done. So that count was dismissed almost a year and a half before the first nurse's deposition. So the judge recognized that if something came up that showed that there was understaffing that caused the problem, and that's why he wasn't being turned or wasn't being monitored, then you could refile and amend the complaint. So if we had determined that, we could have amended the complaint then. But Richter specifically says to me in plain English that if it's dismissed without prejudice or if it's dismissed with leave to amend, that is not a final determination for race judicata. What if you have – I'm the trial judge, and let's take your institutional negligence complaint as a given, and then you have some standard negligence complaints. As I review the complaint, just speaking entirely hypothetically, I think you've had a stated cause of action. The 2615 motion is appropriate with regard to institutional negligence. I'm going to grant the motion to dismiss with prejudice. We've done this now twice. You can't amend this complaint any further as far as I'm concerned. But with regard to the other counts, I think that they need to be made better or clearer. There's some other legitimate concerns about them, so I'm going to grant the motion to dismiss the other counts, negligence counts, with leave to amend. Now, what does that mean? Does that – what happened to the institutional negligence count at this point? Is that now, in fact, gone as far as this is concerned? Well, if it's dismissed with prejudice, it's gone. And that's what the defendants cite at the Hudson, the Rhine, and the Kiefer case. So if you refile the later counts to comply with Foxcroft, do you have to say, by the way, we understand this was dismissed with prejudice, but we don't intend to abandon this count, as the Supreme Court said in Bonhomme. So just so everyone knows, you know, consistent with the trial court's directions, we're not going to refile, but we don't want to abandon it. Is that what you'd have to say? You'd have to do something to indicate that you weren't going to abandon it. But, again, as I mentioned before, was there anything that Judge Bollinger did that we felt was wrong that we wanted to appeal? Those decisions were all correct. Just one other question. I'm not sure about this case. This is eight years old. You know, from an outsider looking on, this is the kind of a situation that, frankly, gives the civil justice system a bad reputation. What's going on? Well, I mean, I have correspondence in my file where it took years to get these depositions done. I took the deposition of the surgeon. How can it take years to get depositions? That's what I'm asking. They wouldn't schedule them. And they were all in the hospital. You know, I don't see how that's an answer, Mr. Walters. That was a trial judge. Say, Judge, try to schedule a deposition. These are the agents of the defendant. They won't do it. Order them. Okay. Well, the first thing is, I hope that's got nothing to do with the legal decision in this case, but if you look at the docket sheet, you'll see there were attempts to get this case moving. It's lost a lot of time, even the last over two years. I'm sorry, I didn't hear the last answer you said. If I look at the docket sheet, you'll see that there were attempts to get the discovery moving. Mr. Walter? Yeah. In reference to Judge Steigman's hypothetical, upon refiling of the complaint, so you have prior dismissal with prejudice of a particular count. I can't remember the basis of the claim for that count that was dismissed with prejudice. But now you've refiled after having taken a voluntary dismissal. With that count that was dismissed with prejudice, could a different judge upon the refiled complaint look at it and say, I think that does state a cause of action, and so now treats the prior dismissal with prejudice of that count as a nullity? They can. In fact, they cite the Reed case where the same judge does it. In the Reed case, they dismiss counts with prejudice, and the judge after that allows an amended complaint. Now, a different hypothetical. Let's just make it real easy. Let's say you've got a two-count complaint. Count one is against the doctor. Count two is against the hospital. Count one against the doctor is dismissed per 2619 for, let's say, it's a statute of limitations. Okay? Doctor is dismissed with prejudice. Against the hospital, it's a 2615 dismissal with leave to amend granted. Upon leave being granted, the plaintiff takes a voluntary dismissal. Within a year later, refiles again against both doctor and hospital. Any question in your mind that race judicata bars the claim against the doctor? The doctor was dismissed without prejudice? Dismissed with prejudice because of statute of limitations. It's a 2619 motion to dismiss. Well, I would say under the current law, which I would also think is incorrect, race judicata would be an issue. Would be an issue? Yeah. And it's similar to the Ryan case in Hudson and Keeper where one of the counts is dismissed with prejudice, and it can't be cured. They don't have strict liability in a foreign country. That's not coming back. Or emergency personnel have immunity, and that count is gone. It's never coming back. That's not the case here. We didn't have anything dismissed like that. Yeah, I understand. Here you're saying it's one defendant compatible claims in terms of the counts, the bases for the claims against the defendant. But in my hypothetical, I'm just trying to figure out how far you're wanting to go with this concept of when leave to amend is granted, then race judicata is not implicated. And in my hypothetical, a separate defendant was dismissed with prejudice, and then the refiling occurs. Simply because leave to amend was allowed plaintiff in that situation, though, would not bar the physician from being able to claim race judicata. If the physician was dismissed without leave to amend and with prejudice. The dismissal order that dismisses the doctor with prejudice and the hospital without prejudice simply grants leave to amend. Then I think the claim would have the argument it wasn't a final judgment because it was given leave to amend. Because Rigler says either or. If it's dismissed without prejudice or if it's dismissed with leave to amend, it is not a final judgment for the purposes of race judicata. So, you know, our third argument is if you take the defendant's position, you completely ignore the statute that best put back into play that a plaintiff has one year to refile an action. I mean, their interpretation is when I discover that the Cater-Home Memorial services is owned by the hospital, that when I walk in front of the judge and say, okay, we're going to refile this and eliminate them as a defendant because it would be duplicative. But that's a final judgment, and I can't refile and file it within a year. And to me, I can't figure out how you'd ever use that statute under that interpretation. I mean, it just completely ignores that statutory language as well as U.S. Supreme Court cases as well as Illinois cases that adopt the restatement of judgments, which says just that. So the last thing I want to get into is one of the problems with delay in this case and one of the big issues is race judicata is not supposed to be applied unfairly or inequitably. What separates this case from every other case on this is the problem we had with Judge Diamond. And we'd go to hearings and he'd talk for 20 minutes about things that were unrelated to the issue. The decisions he made a week before trial were astounding. And Judge Little, who took the case, agreed. I can't imagine why he wouldn't let this person testify based on it's going to be hearsay or why our rebuttal witness wouldn't be allowed to testify under the circumstances. Even if you look at the amended complaint that he didn't allow, to me that's what we're supposed to do. It really sort of just focused on what the issues had become through discovery. One, they didn't monitor him, they didn't turn him. As a result, he left the hospital with an open sore. That was the portal for the disease and that's what killed him. It's got to be very simple. So this isn't a case where a plaintiff will resign or any of these other issues that have popped up. The problem was created by an open sore. And I had long conversations with my client and under the circumstances they agreed the best thing to do was dismiss it and get another judge. That's why we did it. And I totally got aware of Hudson because it never dawned on me I was pursuing two different claims. I was filing a claim based on medical negligence, based on the nurse's care or lack of care during Mr. Ward's stay. There was some confusion also at the start of this case because of the 622 letter. You're all probably aware in a nursing case the 622 letter has to be prepared by a doctor. But the testimony about nursing care has to come from a nurse other than maybe the question of communication between one and the other. So, I mean, we did our original 622 letter was from a doctor. But we have never included physician negligence in this case if you look through the pleadings. And we had to straighten that out. But this case has always been just against the hospital's nursing staff. There's one other potential fifth reason why we think the decision was wrong. And this has to do with this lack of prejudice to the defendant. I mean, there's been no prejudice to the defendant because the only cause of action they addressed by motion for summary judgment, that was denied. And all the other issues in dispute. I mean, it's hard to say anything that wasn't voluntary. When they say, well, the home services are owned by the hospital, shouldn't be a defendant, fine. You know, they're out. When the judge says you can't sue unnamed defendants, fine, they're out. There weren't arguments about this. That's just how the case proceeded. So, again, you know, the prejudice to the plaintiff here is huge. We don't see any prejudice at all to the defendant. We just think that Judge Little had it right the first time when he denied the motion. Thank you. Thank you. Mr. Kehoe. May it please the Court and counsel. The Hudson rule is a pretty difficult rule for plaintiffs. It is somewhat counterintuitive. It's harsh. But I'm convinced it is the rule. We heard many things from the plaintiff here in this case. The case, as the Court noted, went on for seven years, 19 different counts in total, nine counts for the first, four counts next, four counts next, finally two. And on the eve of trial, 10 days before, he asks Lee to file yet another version, which Judge Dimon refused him because it was different in its allegations in the complaint. Counsel suggests that somehow Judge Little was critical of Judge Dimon. I can only say the plaintiff's problems were multifactorial, but 213 was a problem for him because he didn't make disclosures in this case, because he made many different allegations and filed many counts that he had no business filing in this case at all, because they made no sense. Judge Little was not critical of Judge Dimon. The issue in the case, contrary to what counsel says, was never the same. It's true it's the same cause of action. It is, but it was expressed about 19 different ways in this case. There was a claim by Mr. Ward's brother individually for medical expense, and there was no claim like that. There was, in the second amended complaint, there was a constitutional negligence claim for the first time, and the court did dismiss those, did give Lee to file an amended complaint with a proper certificate, which the plaintiff's lawyer never did. And he could have done that, but if he did it and if he intended to preserve it, he would have had to take certain steps that he did not do, which is to, well, there are various things, and we point out in our brief, there are three different things that a plaintiff can do to protect himself under those circumstances. What about the doctrine of, you know, I'm a guy who reads bright lines where possible. A motion to dismiss is granted with leave to amend. It's not a final order. I'm sorry, Judge, would you say it again, please? If a motion to dismiss is granted with leave to amend, it's not a final order. Well, that's not entirely true, Judge.  It seems to me that should be the rule. And what case says it isn't? Well, we have in our brief, there are various cases where leave was granted to file an amended complaint, and the plaintiff did not, and it was considered final. We cited the Rust-Oleum case, Keefer v. Rust-Oleum. I might say also in that second amended complaint, for the only time in this case he alleged physician negligence, and he admitted to the judge. I don't have any basis to say that. But, and so in the second amended complaint, that was dismissed. Again, with leave to re-plead, but he didn't do that. When he did re-plead, in other words, he pled over. He dropped the old claims. He went to a new theory altogether. Isn't a complaint an issue in this case, however, one where the court granted leave to file an amended complaint? On some of them, he did. That's correct. And if the plaintiff had chosen to go on and try to file a certificate, 2622 certificate that was appropriate, he might have been able to proceed that way, but he never did. And he went on and he pled over. He cites, particularly, he cited the Prairie-Richter Prairie Farms case, and that's probably his best case. It probably is. The difference in Richter is that the court early on dismissed a complaint, gave leave to re-plead within, I think, 28 days. The case goes on for three years, and he doesn't. At long last, he takes a non-suit. Well, the difference in that case, and the Supreme Court, I believe, in that case, said, yes, that's not a judgment on the merits. You can do that. The difference is he didn't plead over, as he did in this case every time. In other words, in this case, if we simply had one version and all these things were dismissed early on and given 28 days, then the result might be different. Whether he pleads over or not, isn't a motion to dismiss granted with leave to amend still not a final order? No, I do not believe that's correct, Judge. I think there are cases that say that it depends on the circumstances. It depends what the plaintiff does. He may choose not to. Keefer v. Rustola. Well, okay, sure. If a plaintiff says, I want to stand in my complaint, I don't have any intention of amending. Right. But I'm just looking to the form of the order. Short of the plaintiff doing that, this isn't a final order, is it? Well, it is if he doesn't replead. If he doesn't replead that claim, it's a final order. He was given leave, but if he pleases. Keefer dealt with the dismissal on a complaint that could never be correct because the cause of action wasn't recognized. Isn't that true? Well, that would certainly be a case where the cause of action isn't recognized. That's the Rustolian case, I believe, where it's not recognized in Canada. Yes. But I don't think there are no magic words that make it somehow non-appealable. With prejudice pretty much answers that question, but if he doesn't say anything, if he doesn't say with or without prejudice, that may or may not be a final order. Well, that's a troubling business. If I'm counsel in a case where a motion to dismiss has been granted while I'm the plaintiff or defense counsel, the motion to dismiss granted, I think I'd want to know what granted how, judge. Is this with prejudice? Does this leave to amend? You know, my sympathies are all with the trial court. Sure. I was a proud judge for a long time. I might have a bad hair day, just forget, or suffering from a cold as I am now, so I forget to say things. Shouldn't trial counsel say, by the way, judge, is this a dismissal with prejudice as we're seeking? You didn't do that, did you? Well, no. Aren't there a bunch of counts floating around here that sometimes are just stricken or sometimes dismissed? In many instances. Not just you. I think Mr. Walters as well. We've got all these rulings, and what do they mean? In many instances, it can be specifically said with right to amend within so many days. I mean, clearly. So you think to yourself, okay, that's not final. But it can be, depending on what the plaintiff does. It becomes final. There is a many of these in the First Amendment. I think only one or two of the counts complain from the original complaint. Institutional disappeared. Institutional negligence claimed disappeared. There is a suggestion that we somehow delayed this such that it went seven years and 19 different counts. Well, in the suggestion, Mr. Walters says we couldn't get depositions. Is he right? Well, I think that's a vast overstatement. The case went on for seven years not because we didn't give him witnesses. What about this hypothetical? Let's just take a simple auto case. Two counts, one based on negligence, one based on willful and wanton conduct. The willful and wanton conduct count is dismissed with prejudice. The negligence claim is dismissed with leave to amend granted. An amended complaint is filed and a voluntary dismissal and a refiling. So in that circumstance, does Hudson bar the refiled complaint? Yes, it does. That's the simple example illustrating Hudson. Absolutely. Okay. So here, the plaintiff's assertion is that this isn't claim splitting. It's always been a negligence claim. Where is the claim splitting? The claim splitting is the fact that an institutional negligence claim is separate and apart from a malpractice claim against a doctor or a nurse. It's a totally different theory. Different things must be proven in the case. He urged an institutional negligence. He pled it, and it was dismissed. He was given leave to replete. He did not replete it. So, likewise, the claim against the doctor in the second amended complaint, he never replete that. That would be claim splitting because an action against a doctor is totally different from a nurse. Different things you must prove. Different ways you prove it. The claim by the individual, by the brother in the first case, for the Family Expense Act and for other recovery individually, he didn't have that claim. It doesn't exist. And it was dismissed, and he never tried to replete it. He couldn't have, quite apart from what the order said. So the claim splitting arises. Almost any one of these medical negligence cases involved the same injury. Here it is survival and the death of this man. This middle-aged man goes in for stomach stapling surgery. He's dead two weeks later, suddenly and unexpectedly. This is a devastating illness, very rare. Macon County has 100,000 people. Statistically, one person in Macon County will get this disease in a year. So the claim is somehow that the nurses could have made a difference, if only. If only the nurses had, for example, come back that last day and had seen what was happening. If only the nurses had been more attentive while they were there. But these are totally different theories against different defendants. The injury is the same, as always. In these four cases, the injury generally is fairly single and simple, although the medicine may be somewhat complex. But absolutely, if it's that simple, then why are there 19 counts with a request to file two more? And then with Hudson and Richter, how do you reconcile those two cases? Because in Hudson, the plaintiff did not try to plead over. Forgive me. In Richter, the plaintiff did not replead. He was given 28 days. The rationale of the court, as I understood it, was, look, even though more than 28 days go by, the judge might have allowed him later to change his mind and proceed. Notwithstanding, he didn't early on. In the Hudson case, on the other hand, there was, in the case, a dismissal of the negligence claim, and there was no need then for them to replead the negligence claim because they never sought it. It is the fact that while the negligence claim was not, forgive me, while the willful and want claim was not tried, was not disposed of in the initial filing, it could have been, which is the rationale of Hudson. So in this case, all these various early versions of this complaint, some of these things weren't squarely addressed there, but they could have been. And that's the Hudson theory, as I understand it. You litigate other things, and that, as I say, it's a harsh rule, but I believe it is a rule. I'd like to ask a question following up on Justice Harris' question, and that is, how do you rectify Hudson with the Foxcraft rule that Justice Steigman had mentioned? The parties will want to potentially refile, dismiss counts to preserve the issue for appeal. Judge, I'm sorry. So even if there's a dismissal, counsel may well want to refile dismissed counts to preserve that issue for appeal. How does that rectify with Hudson? Well, it's not inconsistent with Hudson if they do it right, which is to say if they could either stand on the dismissed counts and take a non-suit as to the remaining and take that up on appeal, or they can file an amended complaint and refer to those dismissed counts. If I do that, then he's okay and preserves it. And I don't see any inconsistency between Hudson on the one hand and protecting yourself by going on and preserving your rights as to those things that are dismissed. Is it correct that in Hudson there was no permission granted to file an amended complaint? I think that's correct. Isn't that a difference between that case and this case? There was no need to in that case in Hudson for them to do it. I mean, I think it's clear there was no claim for negligence against the city of Chicago. Well, whether there was or wasn't, there was no permission granted to file an amended complaint. That's correct. That's what the Supreme Court seemed to hope on, didn't it? No, I don't think so in Hudson. That goes back to my initial question. I'm looking for bright lines. If there's a leave granted to file an amended complaint, I don't see how Hudson is going to do that. So Hudson becomes the definitive case for our situation here. Well, Hudson was factually much simpler than this case insofar as the pleading history is concerned. There's simply no reason. I'm confident the lawyer in Hudson, who unfortunately died on the eve of trial on that occasion in the non-suit, I'm confident he knew he did not have a negligence claim against the city of Chicago. There was no need to go on and ask leave to file an amended complaint. If he had, he could have saved himself by going on and referring back to that count. He could have done that. So there is a suggestion here by counsel that we should have advised him in some fashion when we were before the court about ten days before trial, and he determined to take his non-suit at the case. There was a suggestion that maybe we should have warned the plaintiff's lawyer that there were dangers in this matter, and we included in our brief some of that conversation that occurred with Judge Diamond. Plaintiff's counsel talks about, well, Judge, you know, maybe I'm just going to have to take a non-suit, and I don't know if the hospital wants to go through all this again. And the judge, under the circumstances, says, well, Mr. Keir, what about that? Do you want to do that again? To the judge, look, this case has gone on for seven years. Things have happened in that case, notwithstanding refiling, that are of significance in this case. And the judge said, I know. And I think he was referring exactly to this. I have no doubt that counsel for plaintiff didn't know about this doctrine of Hudson. I have no doubt. I have no doubt that he probably didn't. And I've got to tell you, I've filed maybe five plaintiff's court cases ever in my life, always on the defense side. It's just worked out like that. I'm telling you, I would have been caught on this case, like Mr. Walter was. I would hope that I wouldn't have filed all these counts and have complicated it to that extent. But, I mean, it is, I think, little known. I think it's a danger to plaintiff's lawyers. I think it's something that, you know, it's harsh, as I say it. Ultimately, in order for rape judicata to be applicable, you have to have a final judgment, correct? That's one of the elements. Yes, that's true. Well, a judgment on the merits. Judgment on the merits, which is a final judgment. So whatever that count is against whichever party. So judgment on the merits. And Richter says if you have an interlocutory order, that's not a final judgment or an adjudication on the merits. Is that right? I think that's overly broad. I don't think it really says that. I think if it grants leave, I think, and you go on and plead over, then I think it becomes final by reason of the plaintiff's actions in the case. Can you explain that? Because just as we're talking about it here, it occurs to me that that would be an interlocutory order, the dismissal that allows pleading over. Right. But you say no? Well, the plaintiff can seek to refile, to file an amending complaint. If he chooses not to, and if he instead goes on to another theory in the case and does not protect himself, then it is a judgment on the merits. Under Rule 273, when this non-suit takes place, any involuntary, any dismissal by the court is on the merits, unless it's improper venue, lack of jurisdiction, lack of an indispensable party. It is on the merits. When the case is dismissed, it is then appealable at that time. Even though I know in the normal course, you know, we go along and a judge says, okay, leave to amend within 28 days, and you think, okay, they're going to do it. But sometimes they don't. But if the party does replete, then looking back at that order, is that an interlocutory order? If they replete that count, yes, it is interlocutory. If they don't replete that and don't protect themselves, it's on the merits. So are there any other questions? I don't see any. Thank you. Mr. Walter, rebuttal argument? Yes, thank you, Judge. I don't see where the number of counts has any bearing. I mean, there are multiple counts because there were multiple parties at the beginning. And when they disappeared, the number of counts came down. There were always counts against the hospital for survivorship and always counts against the hospital for wrongful death. And those two counts are the same through all the amended complaints. I beg to differ. In his order allowing the testimony of Nichelle Gavin, it's Nichelle with an N, and our rebuttal witness, you know, he says, with all due respect, I just don't understand how Judge Diamond came to the conclusion that this person could not testify or these persons could not testify. This disclosure issue is another example of why this case took so long. In 213, it makes the suggestion that the disclosure appear in your answers interrogatory, which is exactly where our disclosure appeared from day one when we filed our initial answers. Very detailed statements that were going to come from both the doctor and our nurse expert. And they filed a motion to prevent their testimony because we haven't made a disclosure. And this is one of the cases where the judge talks for 20 minutes. He's going to rule against me. He hasn't looked at the answers to the interrogatories. I mean, this took months to go through. And all that information is right in there. If you look to our answers to the interrogatories, the full disclosure is right there. It was just a total waste of time. Their description of Richter, they're making things up. I mean, Richter says in plain English, if a case is dismissed without prejudice or if a case is dismissed with leave to amend, that is not final judgment. He goes on to say that if defendants want to make that a final judgment, as you mentioned, it's up to them to do that. And they never do that. When we hear the words without prejudice, I didn't feel I needed to ask for anything else. And I think I know what that means. And so Richter says it's not a final order. And if they want a final order, it's up to the defendant to ask for it. Well, you heard Mr. Kehoe try to come up with an explanation how if a judge says I'm granting motion dismissed with leave to amend, then you don't do anything. Then it could become final, I think he was saying. Is he right? No. And look what that would lead to. I mean, should I be better off if I refile an account on institutional negligence whenever taking the depositions of the nurses, none of them say it's a staffing problem? I mean, I'm just wasting everybody's time. The incentive should be the other, which is what we did. So if the court gives you 28 days to refile a particular account, you fail to do so within 28 days, what's the status of that matter? I think you can refile, as Richter says, you can refile any time after. In the case they say read, it's dismissed with prejudice, and the judge allows refiling after, even with prejudice. Wouldn't you need leave after the 28 days runs? I think so, but I think what those cases say is, you know, we would grant leave. If I would have gone back in front of Judge Bollinger or Judge Diamond or Judge Little and said, look, we've taken the depositions of the nurses, they're saying, you know, we understand this happened, but we didn't have enough nurses. I mean, we couldn't cover the floor. Well, then we would have asked to amend the complaint, because those depositions took well after that count was dismissed from the complaint. So do we really want to say I should have gone back and filed another count knowing that there's no basis for it? Should I be worse off by doing it correctly? It doesn't make any sense. And I just think the Richter language is very clear, maybe because they're not real happy with the Hudson decision. If you read Judge Kilbride's dissent in Hudson, you can't but conclude that he and the judges that side with him are correct. I mean, there's hundreds of cases on this now getting into these issues of whether it was dismissed with prejudice and it wasn't curable. In the Hudson case, you couldn't bring back the EMS people because they have immunity. In the Kiefer case, you couldn't bring a strict liability claim. I mean, you really want to decide these issues on that when you have a statute that says if you dismiss the case voluntarily, you have one year to refile. And Judge Diamond, as the defense counsel said in that hearing, knew exactly what we were doing. I mean, we were going to have to refile the case, and he dismissed it without prejudice. Regardless of everything else that happened, he dismissed the pending claim without prejudice. What other possible meaning can that have other than I have a year under the statute to refile the claim? And if there had been any cause of action that had been dismissed with prejudice prior to that, then I'd have an issue, but I don't here. There's no cause of action that was dismissed with prejudice or without need to refile. A bunch of time was lost in this issue of the doctor. We never brought a claim against the doctor. There's no claim against the surgeon. The reason we used the doctor for 622 is we needed that. And then the judge looked at the complaint. And if you look at the original allegations of negligence, the word treat is in there. We think nurses treat people all the time, changing bandages or giving them medication. But the judge said, if you want to keep that in there, you've got to mention the doctor. So we put the doctor didn't treat. And it was still blamed on the nurse because they weren't telling the doctor what was going on. And that's why the doctor wasn't properly treating him. But there was never a claim against the doctor. And we even told them we weren't going to have the doctor testify. We only needed him for a 622 letter. Again, there was never any argument about that. I just think under Rick and under Wilson, for those four or five reasons, this case ought to finally get to trial. We think the judge will have it right the first time. Thank you, Mr. Walton. Thank you both. The case will be taken under advisement in a written decision, shall we?